REID v. FARGO et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1914.)

No. 162.

1. ADMIRALTY (§ 117*)—APPEAL—REVIEW—SCOPE.

An appeal in admiralty vacates the decree below, and the cause is tried anew, and parties other than those appealing may have new relief.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 748–757; Dec. Dig. § 117.*]

2. SHIPPING (§ 143*)—CARRIAGE OF GOODS—LIABILITY FOR INJURIES.

Stevedores employed by a steamship company to discharge the cargo of a steamship were not liable to the shipper of an automobile injured through the breaking of a rope used in hoisting it from the steamer to the pier, except for negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 489; Dec. Dig. § 143.*]

3. SHIPPING (§ 132*)—CARRIAGE OF GOODS—NEGLIGENCE—EVIDENCE—RES IPSA LOQUITUR.

The breaking of a rope used by stevedores employed in unloading a vessel did not in itself establish negligence, but, where the whole operation and the apparatus used was in their exclusive control, it required them to give an explanation.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

4. SHIPPING (§ 132*) — CARRIAGE OF GOODS — NEGLIGENCE — EVIDENCE — WEIGHT AND SUFFICIENCY.

Evidence that a rope used by stevedores in unloading a vessel, and which broke, permitting an automobile to fall into the river, was furnished by the steamship company and was new, free from external defects, of a size sufficient for the load and slung in the usual way, and that the case containing the automobile was raised in the usual manner without jerk or sudden strain, showed that the accident was not due to their negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

5. CARRIERS (§ 178*)—CARRIAGE OF GOODS—LIABILITY FOR INJURIES.

An express company to which an automobile was delivered to be packed and forwarded to a sea port by rail and there delivered to a steamship for transportation, which did so deliver it, and received the steamship company's usual bill of lading to its order, was not an insurer nor a car-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rier, but a mere forwarding agent, and was not liable for the negligence of the steamship company or of stevedores employed by it to unload the steamship.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 804–812; Dec. Dig. § 178.*]

6. Carriers (§ 180*)—Carriage of Goods—Liability for Injuries.

Where an express company, to which an automobile was delivered to be packed and forwarded to a sea port and there delivered to the steamship company for transportation, received the steamship company's usual bill of lading containing a stipulation that the value of the shipment did not exceed $100, on which basis the freight was adjusted, and that the carrier's liability should not exceed that sum unless a value in excess thereof was specially declared and extra freight paid, though it had notice that the car was worth £800, it was not liable to the shipper for its failure to arrange with the steamship company to carry it at that value.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. § 180.*]

7. Carriers (§ 180*)—Carriage of Goods—Limitation of Liability.

An agreement, in a bill of lading issued by a steamship company for an automobile, that the value of the shipment did not exceed $100, on which basis the freight was adjusted, and that the carrier's liability should not exceed that sum unless a value in excess thereof was specially declared and extra freight paid, was binding and limited its liability for damages to the automobile to $100, though the freight was calculated on measurement and not on value.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. § 180.*]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Ogden M. Reid against James C. Fargo, president of the Adams Express Company. The International Mercantile Marine Company and T. Hogan & Sons, Incorporated, were interpleaded. Decree for libelant, and T. Hogan & Sons appeal. Reversed, with directions.

F. H. Platt, of New York City, for appellant.

W. F. Taylor, of New York City, for Fargo.

N. B. Beecher, of New York City, for International Mercantile Marine Co.

H. S. Harrington, of New York City, for libelant.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. Ogden M. Reid delivered an automobile to the American Express Company at London to be packed and forwarded by it to Southampton by rail, and there delivered to the steamship Minnetonka of the International Mercantile Marine Company for transportation to New York. The express company did so and received the company's usual bill of lading to its order. Upon arrival of the steamer, T. Hogan & Sons, stevedores, under contract with the steamship company, discharged the cargo. The case in the hold was put in a rope sling and hoisted to the deck of the steamer, and, while being carried off to the pier by a Burton fall, the sling broke, and the case fell into the river. Reid filed a libel against the express company, an unincorporated association, of which the respondent Fargo is pres-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ident, to recover the damages. The express company, by petitions un-der the fifty-ninth rule in admiralty, brought in the steamship com-pany and T. Hogan & Sons as parties.

The District Judge filed no opinion but directed a decree in favor of the libelant against T. Hogan & Sons in the first instance, and, for any deficiency not collected of them, against the American Express Company, and dismissed the petition against the steamship company. T. Hogan & Sons alone appeal from the decree.

[1] New parties brought into a suit under the fifty-ninth rule are treated as if they had been originally proceeded against and must an-swer the libel. It is the law of this circuit that an appeal in admiralty vacates the decree below, and the cause is tried anew in this court. Other parties without appealing may have new relief. Munson Line v. Miramar Steamship Co., 167 Fed. 960, 93 C. C. A. 360.

[2-4] T. Hogan & Sons had no contract with the libelant and are only liable for negligence. The mere breaking of the rope does not establish negligence, but it does require them to give an explanation which will discharge them of negligence because the case and the steam winches and the whole operation were in their exclusive control. They have shown that the rope was furnished to them by the steamship com-pany; that it was new, free from any external defects, of a size suffi-cient for the load, was slung in the usual way; and that the case was raised in the usual manner and without any jerk or sudden strain. We think it follows that the accident was not caused by their negligence, but must have been due to a latent defect. The rope belonged to the steamship company and went back into its possession after the acci-dent. It has not been produced because it has been lost. We think that T. Hogan & Sons are not liable to the libelant.

[5, 6] We have next to inquire whether the express company is lia-ble. It was not an insurer nor a carrier, but a mere forwarding agent. It was not liable for any negligence of the steamship company or of the stevedores. The libelant suggests as a ground of liability that, having notice that the car was worth £800, it should have arranged with the steamship company to carry it at that value. No such ground of lia-bility is charged in the libel. On the contrary, it proceeds upon an allegation that the express company agreed to safely carry the car to New York and there deliver it to the libelant. No such agreement or relation has been proved. Shippers almost invariably accept the car-rier's ordinary bill of lading, and, in the absence of any evidence, we are not disposed to imply as matter of law a duty on the part of the express company to do otherwise.

[7] Finally we come to the steamship company. It did stand in re-lation to the libelant of carrier of his car and was an insurer except as to the act of God, the public enemy, and causes excepted in the bill of lading. As we find no exception covering this loss, the steamship company must be held liable. Its bill of lading, however, contained the following clause:

"(1) It is also mutually agreed that the value of each package shipped here-under does not exceed $100, or its equivalent in English currency on which basis the freight is adjusted, and the carrier's liability shall in no case ex-ceed that sum, unless a value in excess thereof be specially declared, and stat-

ed herein, and extra freight as may be agreed on paid. The carrier is further entitled to the full benefit of all exemptions from liability provided in sections 4281 and 4282 of the United States Revised Statutes [U. S. Comp. St. 1901, pp. 2942, 2943]."

Similar stipulations are held binding in this court. George N. Pierce Co. v. Wells Fargo Co., 189 Fed. 561, 110 C. C. A. 645. But the proctors for the express company contend that, as the freight on the car was calculated on measurement and not on value, this stipulation does not apply. Freight rates on a package and the amount an owner may recover in case of loss are two entirely different things. The parties may agree that for a higher freight the package shall be valued for purposes of recovery at over $100. In this case they have agreed that the value of the car is $100, and that must be taken to be its true value for purposes of the contract of carriage. Of course the stipulation would not apply if the car had been charged an ad valorem freight on a value over that amount. But in this case the freight was charged on measurement.

The decree is reversed, and the court below directed to enter a decree dismissing the libel against the American Express Company, with costs of both courts, and dismissing the petition bringing in T. Hogan & Sons, with costs of both courts against the American Express Company, and awarding the libelant the sum of $100 to be paid by the steamship company, with costs of both courts to the express company.