Mr. Justice ÍTELSOU
 

 delivered the opinion of the court.
 

 This is a writ of error to the Circuit Court of the United States for the district of Maryland.
 

 The suit was 'brought in the court below by the plaintiffs against the defendant, collector of the port of Baltimore, to recover back an excess of duties paid under protest on an importation .of iron.
 

 The iron was shipped from Liverpool, and, on an appraisal at the custom-house in Baltimore, the invoice price was adopted as the' minimum market value upon which to assess the duties. The plaintiffs claimed that the iron ought to be appraised at the actual cash market value, or cash wholesale-price, instead of the actual market value or wholesale price at a credit of four months, the usual time in the purchase of iron. But the collector insisted upon the invoice price as the 'minimum valuation. Two invoices are given in the record as specimens of those produced at the trial. One of them contains the price of the iron',, with a deduction of two and a half per cent, for prompt payment, which means cash; the other adds at the foot, four months credit, which is the customary credit in the trade.
 

 The court charged the jury, that it being admitted that the duties were levied on the prices at which the iron was charged in the invoices, they were lawfully exacted, and the plaintiffs not entitled to recover; and that the entry in the invoice, that the plaintiffs would be entitled to a deduction for prompt payment, could not affect the amount of duty chargeable.
 

 The eighth section of the act of 1846 (9 U. S. St., p. 43) provides, “that under no circumstances shall the duty.be assessed
 
 *383
 
 upon an amount less than the invoice value, any law of Congress to the contrary notwithstanding.”
 

 It is claimed that this section has been repealed by the act of Congress of March 3, 1851, (9 St. U. S., p. 629,) which provides that the collector shall “cause the actual market value, or wholesale price thereof at the period of the exportation to the United States, in the principal markets of the country from which the' same shall have been imported, &c., tq.be appraised, &e., and to such value, or price shall be added all costs and charges, &c.,as the true value at the port where the same may be entered,” &c.
 

 ' Previous -to this act, the time when the value of the article in the foreign market was to be ascertained, was the time of the purchase, (Act 30th August, 1842, sec. 16, 5 St. U. S., p. 563;) .now, by the act of 1851, the time of exportation. There is no change, however, in the rule which must govern in making the valuation — it is the actual market value or wholesale price in the principal markets of the country from which the article shall have been imported. The only real change, therefore," in respect to this matter, under the law of 1851, from that of 1842 and 1846, would seem to be a change of the time when the valuation is to take place, without intending to interfere with any.other of the regulations in the former laws.' This was the interpretation given by the Department of the Government having charge of this subject, soon after the passage of the act in question, and, we think, may be sustained upon the principles that this court has uniformly applied in interpreting these revenue laws.
 

 The construction is also borne out by the case of Stairs et al.
 
 v.
 
 Peaslee, (18 How., 522.) That ease recognises the eighth section of the act of 1846 as in force since the act of 1851, and the clause in question is a part of it.
 

 In respect to .the deduction from the price on account of prompt payment, we think the fact does not vary or affect the price of the article, as stated in the invoice. It relates simply to the. mode of payment, which may, if observed, operate as a satisfaction of the price to be paid by the acceptance of a less sum.
 

 "We think the ruling of the court below right, and that the judgment should be affirmed.