ernment, not a benefit to the goods arising from the act of the ship-owner. The ship-owner is no party to the dealing of the freighter with the government, and the result of that dealing cannot inure to his benefit, otherwise the ship-owner might claim to take upon himself the adjustment of the duty, and if not permitted, he might ask to show in diminution of his liability, that if permitted, he would have obtained a larger rebate.

Upon these grounds I must reject the claim of the respondents that the rebate of duties obtained by the libellant from the government be credited to them, in calculating the damage arising from their negligence.

The bags damaged by petroleum were sold at a loss of $140.39, and this sum the libellant claims should be allowed him as his damages. The damaged almonds were kept in store some fifteen months before they were sold, and when sold, it was without notice to the ship. There is evidence that the almonds were sold in the usual way, and some evidence that no material change in the market occurred while they were in store. On the other hand, it is shown that soon after the arrival of the cargo, the consignees caused an estimate of the damage to be made by their own broker, and upon such estimate sent in a bill to the ship for $100 as the damage. I am of the opinion that the respondents can resort to this bill rendered as showing that a difference in value did occur between the time of arrival and time of sale, in which case there being no other proof, it must be taken as evidence of the amount of such difference. Of this the consignees cannot complain, as it is their own bill.

The libellant is therefore entitled to recover $100 with interest from the date of the arrival of the ship.

## Case No. 4,522.

### The EROE.

[17 Blatchf. 16.][1]

Circuit Court, S. D. New York. Aug. 11, 1879.[2]

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]
[2] [Affirming Case No. 4,521.]

Beebe, Wilcox & Hobbs, for libellant.
Butler, Stillman & Hubbard, for claimant.

BLATCHFORD, Circuit Judge. The libel claims $300 for damage to 1,503 bags of almonds in the shell, the damage being alleged to have been caused by the improper stowage of the almonds, so that they were injured by oil and wine. The district court found, from the proofs, that the contents of 192 of the bags were, on arrival, injured by contact with petroleum oil, and that the vessel was responsible for such damage. On a reference to ascertain the amount of such damage, the referee reported that no damages to the libellant were proved. On exceptions to the report by the libellant, the district court sustained the exceptions, and made a decree awarding to the libellant, as damages, $100, with $15 75 interest and $112 57 costs, being $228 32, in all. [Case No. 4,521.] The libellant is satisfied with this decree, and has not appealed. The claimant has appealed. The district court held, that the diminution of the almonds in value was wholly caused by petroleum, and that the proper measure of damage was the difference between the market value of the almonds in the 192 bags, as they arrived, and their sound value. This the court fixed at $100, and it allowed interest thereon from the date of the arrival of the vessel.

The claimant insisted, before the district court, that the libellant ought to give credit for a rebate of duties which he had received from the United States government, on the damaged almonds in the 192 bags, on account of petroleum damage; and that the amount of such rebate exceeded $100. The district judge rejected this view, and said, in his decision: "The market price of a merchantable commodity must furnish the test of value. To take into consideration the amount of duty paid upon an article, in determining its value, is, according to my view, to resort to cost as a test of value. The rate of duty, doubtless, is an element which goes to fix market value, but the amount paid for duties upon any particular article is not taken into consideration, in determining the value of that article. The article sells for the same, whether the owner paid or escaped paying the duty. So, in this instance, the damaged almonds were worth the same in the market, whether the libellant paid the whole, or a part, or none, of the duty; and the difference between that value and the market value of sound almonds shows the amount of injury caused by the failure of the ship-owner to perform his contract. Any advantage which the freighter has gained in adjusting the duties, was an advantage to him in his contract with the government, not a benefit to the goods arising from the act of the ship-owner. The ship-owner is no party to the dealings of the freighter with the government, and the result of that dealing cannot inure to his benefit: otherwise, the ship-

owner might claim to take upon himself the adjustment of the duty, and, if not permitted, he might ask to show, in diminution of his liability, that, if permitted, he would have obtained a larger rebate. Upon these grounds, I must reject the claim of the respondent, that the rebate of duties obtained by the libellant from the government be credited to him, in calculating the damage arising from his negligence." This decision was made in July, 1877. In January, 1877, in the district court for the southern district of New York, the case of The Carlotta [Case No. 2,413] came before me, in which, in directing an interlocutory decree for the libellant, and a reference, in a suit for the breach of a contract of affreightment by a vessel, I said, that, if any sum of money had been received by the libellant, or by any purchaser of the damaged goods from him, from the government, as a rebate of duties, for loss or damage in respect of any goods as to which an allowance should be found due for loss or damage, he must be charged with such sum. The view thus expressed was brought to the notice of the district judge who decided the present case. He announced his dissent from it, and proceeded to give his own views, as above set forth. In the case of The Carlotta [supra] no allowance was, in fact, made for a rebate of duties, because, no allowance was made for damage in regard to any goods respecting which a rebate of duties was made. The case of The Carlotta came, on appeal, before Chief Justice Waite, sitting in the circuit court for the southern district of New York, July 31st, 1879 [unreported], but the question raised was not decided, because he concurred with me in not allowing any damage in regard to any goods respecting which a rebate of duties was made. It remains, therefore, to decide, in this case, whether, where a rebate of duties is made in regard to goods respecting which damage is awarded for breach of a contract of affreightment by a vessel, the vessel can have credit, against the amount of damage, for the amount of the rebate. I think the considerations set forth by the district judge, in this case, present the proper view of the law, and that the libellant is entitled to a decree for $100, with interest from the date of the arrival of the vessel, with $112 57, his costs in the court below, and with his costs in this court.

## Case No. 4,523.

### ERRETT v. CRANE.

[21 Int. Rev. Rec. 268.]

Circuit Court, E. D. Michigan. July 2, 1875.

The following is the substance of the oral judgment delivered by

EMMONS, Circuit Judge. This was a bill to quiet the complainant's title to lands situate in Wayne county, known as the Reeder farm. The complainant claims title as an heir of John Harvey, to whom the lands were patented in 1811. The defendant in 1869 commenced seven separate suits in ejectment for the recovery of different parcels together, including the entire tract. These suits at law have been strenuously contested by the defendants therein, and the main suit of Crane v. Reeder [Case No. 3,356] has been three times tried by a jury of Wayne county, resulting in each case in a verdict in favor of the defendants. These verdicts and the judgments thereon rendered have been reversed in the supreme court of Michigan, are reported in 21 Mich. 24; 22 Mich. 322; 25 Mich. 303; and the case stands at issue. Petitions to remove these suits to the federal court have been filed and granted by the circuit court for Wayne county. Such orders, however, have since been reversed by the supreme court of the state, and upon motions made to remand two of the cases they have been certified from the circuit court of the United States upon a certificate of division of opinion, and are there awaiting argument. The defendant in this suit filed a plea and disclaimer, setting up the pendency of these suits at law and alleging the proceedings with particularity. The complainant set the plea down for argument, and it was argued and submitted, D. B. and H. M. Duffield, Ashley Pond and Theodore Romeyn appearing for complainant, and Douglass and Bowen and William P. Wells appearing for the defendant Crane. The facts in this case, so far as they were necessary to determine the sufficiency of the plea, were very few. The many years of complicated litigations carried on in the state tribunal, and above referred to, although much discussed at the bar, had no significance here. The questions raised by the pleas could all be disposed of without other statement than to say, that 10 tenants in common owned the tract of land to quiet title to which the present bill is filed. Against two of these tenants the defendant Crane brought ejectment in the state court. The others were not made parties, nor were any steps taken to implead them under the Michigan law. The complainant Errett, one of the owners, filed her bill in this court to remove the cloud upon her title, which Crane's claim creates. The defendant, Crane, pleads in bar the pendency of the ejectment in the state court against her co-tenants. It is claimed that the jurisdiction of this court, to entertain a bill like this, depends upon the absence of all opportunity on the part of a complainant to litigate the question in a suit