THE M. S. CALIFORNIAN.*

J. V. LANE & CO., Inc., v. AMERICAN–
HAWAIIAN S. S. CO.

No. 242.

Circuit Court of Appeals, Second Circuit.
Feb. 10, 1936.

De Forest, Cullom & Elder, of New York City (Neil P. Cullom and James E. Freehill, both of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (L. DeGrove Potter and Michael F. Whalen, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Heretofore the appellee was held liable for damages to cargo shipped by the appellant. A commissioner was appointed to assess the damages. Appellant appeals from the decree affirming the commissioner's findings as to damages.

Appellant and its assignors shipped flour of various brands from the west coast on the M. S. Californian to various purchasers to be delivered at New York on a C. I. F. basis. The sale price included cost, insurance, and freight. During the voyage, the market was going down so that the sale prices were higher than the market prices at the time of the ship's arrival in New York.

Clause 13 of the bills of lading reads: "It is hereby mutually agreed that the shipper of the goods has been given a choice of freight rates as per tariff published, for the transportation of the goods covered by this bill of lading and that the freight on the goods is based upon the de-

*Writ of certiorari denied 56 S. Ct. 959, 80 L. Ed. —.

clared value of said goods. The shipper declares and agrees that, unless a different valuation is stated in this bill of lading and freight paid thereon as per tariff, the value of said goods is not more than $500 per piece or package and in no case more than the invoice value of said goods at point of shipment * * *. And it is further agreed that all claims for loss, damage or delay for which the ship owner may be liable shall be adjusted on the basis of value declared herein, or proportionate part thereof in case of partial loss or damage; provided, however, that in no case shall the ship owner be liable for any loss or damage in excess of the actual pecuniary loss or damage sustained by the shipper, owner or consignee."

Clause 5 provides: "Prepaid freight * * * shall be deemed fully and irrevocably earned on shipment of the goods * *. Freight as specified in the bill of lading when payable on delivery shall be considered earned and payable though the goods are delivered in damaged or unsound condition * * *."

It was held below that clause 13 provides that damages should be adjusted on the basis of invoice value at the point of shipment with the limitation that the damages might not exceed the pecuniary loss. The court held that the invoice value at the point of shipment did not include freight and insurance but did include brokerage at 15 cents a barrel which arose out of the original sales of flour. The actual pecuniary loss was held to be the difference between the market value of undamaged flour of the same brands in New York less the proceeds of the sale of the damaged flour. The court computed the difference between the invoice value at the point of shipment (less freight, declared value and insurance) and salvage, and the difference between the market value at New York and salvage, and in each case awarded appellant whichever was the lesser of the two sums for a total amount found to be $22,202.92.

■ The appellant argues that the commissioner did not allow a recovery of the expenses paid by them in transporting the goods to New York. The argument may be stated differently; that is, the sale of the damaged goods was free of all transportation charges and the amount realized should be reduced by the sum of these expenses before being credited against the invoice value at the point of shipment. This would be tantamount to including the freight and insurance costs in the invoice value. See United States Willow Furniture Co. v. La Compagnie Générale Transatlantique, 271 F. 184, 186 (C.C.A.2). Yet Anchor Line v. Jackson, 9 F.(2d) 543 (C.C.A.2), expressly excluded freight as part of the invoice value. The case at bar is even stronger for excluding these expenses in naming "invoice value of said goods at point of shipment."

While it may seem inequitable to deduct the freight charges from the invoice value, before crediting against it the sale proceeds which include these charges, the net effect is only that the appellant is not allowed to recover freight paid. If the damaged goods had been sold at the shipping point, it is true that the credit against the invoice value would be smaller and the recovery correspondingly greater. However, in that case, the appellant would have received less on the sale of the damaged goods, presumably the difference would be the cost of transportation. So the appellant's recovery plus the salvage value of the goods would be the same in either case, and by either method, the shipper would be held to pay his own freight.

■ Although shippers have been allowed to recover freight where there was a valuation clause setting up the invoice value at the time and place of shipment as a basis for computing damages, none of the courts adverted to any clause similar to clause V here, that freight shall be considered earned despite damage to the goods shipped. The Oneida, 128 F. 687 (C.C.A.2, 1904); United States Willow Furniture Co. v. La Compagnie Générale Transatlantique, 271 F. 184 (C.C.A.2); The Asuarca, 13 F.(2d) 222 (D.C.S.D.N.Y.). In the ordinary damage rule, measuring the recovery by the difference between the market value for sound goods at destination on the date arrival was due and the actual amount received on sale of the damaged goods, no allowance is made whereby the shipper can recover his freight expense and there seems to be no reason for disregarding the contract provision here that freight is earned on shipment.

■ Clause XIII, here, in providing that all claims for loss, damage, or delay, for which the shipowner may be liable shall be adjusted upon the basis of the value declared herein, was taken by both parties to refer to the invoice value at the point of shipment. This is a true valuation clause in

the language of the Supreme Court: "It is to the effect that in event of loss or damage for which the carrier is liable, the same shall be computed on the basis of the value of the goods at the place and time of shipment." See The Ansaldo San Giorgio I, 294 U.S. 494, 496, 55 S.Ct. 483, 485, 79 L. Ed. 1016. It is not incongruous to have with this clause a limitation on the carrier's liability, viz., that the recovery should not exceed the actual pecuniary loss sustained by the shipper. This would be important if the shipper had been offered but one rate unrelated to the value of the goods. But that requirement that there be consideration for the limitation does not affect the question here. The commissioner was right in determining the amount of recovery by both methods and selecting the smaller of the two.

The flour in the several causes of action was sold prior to shipment by the mills through employees. Commission brokers were paid. This arose out of the original sale of the flour prior to shipment and became part of the invoice value which should not be deducted from the invoices. It became part of the actual cost of the flour. Arthur v. Goddard, 96 U.S. 145, 24 L.Ed. 814; Goodwin v. United States, Fed.Cas. No. 5,554.

Appellant contends that the actual pecuniary loss here meant the difference between the salvage value of the flour and the price for which the shippers had contracted to sell the flour. In inserting this provision in the bill of lading, following the limitations, it was not intended that the shipper might recover any damage it suffered, special or otherwise. It meant that in no case might the shipper recover more than the damage allowed by law in the absence of any other limitations or valuation. The damages the appellant is seeking to recover are special damages not ordinarily recoverable. The appellant's construction would permit recovery to include profit or contract loss. It might also include charges such as commissions on the contract or other expenses to which the shipper was put in connection with the sale of the goods or the shipment. The limitation to actual pecuniary loss or damage means the difference between the sound market value and the damaged value at New York which was as found by the commissioner.

Decree affirmed.